UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _____

EDUARDO ABUMOHOR and those )
similarly situated, )
)
Plaintiff(s), )
)
v. )
)
G4S SECURE SOLUTIONS (USA) INC. )
)
Defendant. )

## COMPLAINT

Plaintiff, EDUARDO ABUMOHOR, on behalf of all those similarly situated, sues the Defendant, G4S SECURE SOLUTIONS (USA) INC, and alleges:

1. This is an action to recover money damages for unpaid overtime under the laws of the United States.

2. This Court has jurisdiction pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201-219 (Section 216 for jurisdictional placement) ("the Act").

3. Plaintiff is a resident of Miami-Dade County, Florida, within the jurisdiction of this Honorable Court. Plaintiff is a covered employee for purposes of the Act.

4. Corporate Defendant is a Florida corporation, having its main place of business in Jupiter, FL. However, Defendant operates in Miami-Dade County as well as the rest of the state. At all times material Defendant was and is engaged in interstate commerce.

**COUNT I: OVERTIME WAGE AND HOUR VIOLATION BY DEFENDANT**

5. Plaintiff incorporates paragraphs 1-4 above.

6. This action is brought by Plaintiff and all those similarly situated to recover from unpaid overtime compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 U.S.C. § 207. 29 U.S.C. § 207 (a)(1) states, "No employer shall employ any of his employees . . . for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed."

7. Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b). Defendant is and, at all times pertinent to this Complaint, was engaged in interstate commerce. At all times pertinent to this Complaint, Defendant operates as a provider of security personnel and systems which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states, and Defendant obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do its business, transmits funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to its employees. Upon information and belief, the annual gross revenue of Defendant was at all times material hereto in excess of $500,000 per annum, and/or Plaintiff, by virtue of working in interstate commerce, otherwise satisfies the Act's requirements.

8. By reason of the foregoing, Defendant is and was, during all times hereafter mentioned,

an enterprise engaged in commerce or in the production of goods for commerce as defined in §§ 3 (r) and 3(s) of the Act, and/or Plaintiff and those similarly situated were engaged in interstate commerce for Defendant. Defendant's business activities involve those to which the Act applies. Defendant supplies security personnel and systems and, through its business activity, affects interstate commerce. Plaintiff's work for Defendant likewise affects interstate commerce as he provides security services for businesses engaged in interstate commerce as well as uses the instrumentalities of commerce with his job.

9. Plaintiff and those similarly situated are called Captains including Site Captains, Road Captains, and Publix Captains. They are all hourly employees performing only the job of Captains.

10. Plaintiff has been employed by the Defendant (or its predecessor) for approximately 8 years.

11. While employed by Defendant, Plaintiff worked an average of 60 (sixty) compensated hours per week. However, Plaintiff was undercompensated for hours over 40 per week.

12. Despite Plaintiff only working one job for Defendant, he was compensated as though he was performing two separate jobs at two separate rates.

13. Once Plaintiff and those similarly situated reach 40 hours per week, they are automatically moved to a different rate of pay in the pay system. This occurs despite Plaintiff continuing to perform the same job in the same way. Furthermore, Plaintiff and those similarly situated do not clock in any differently for these hours.

14. The base rate of pay for the hours worked over 40 are considerably less than the pay for

hours worked under 40.

15. Defendants then pay overtime of 1.5x based on a blending of the two rates of pay.

16. For example, Plaintiff is currently paid at a rate of $20 per hour. However, when he works above 40 hours, his base rate changes to $13.50 per hour. If Plaintiff were to work 60 hours in a week, his paystub would look like the following[1]:

| PAY | RATE | HOURS | CURRENT |
|---|---|---|---|
| Regular Pay | $13.50 | 20 hours | $270 |
| Regular Pay | $20 | 40 hours | $800 |
| OT Prem @.5 |  | 20 hours | $178.55 |

17. Instead of paying Plaintiff overtime at a rate of $30 per hour, Defendant uses a formula that gives each rate a weight comparable to the percentage of hours Defendant claims Plaintiff worked at that rate. In this example that weight would be 67% for the $20 rate and the $13.50 rate is given 33%. ($20 x .67 + $13.50 x .33) x .5 halftime rate x 20 hours = $178.55. Instead of Plaintiff making $1400 in this week, he would make only $1,248.55. Unfortunately, the more an employee works, the more money they would lose.

18. Using a blended rate to calculate overtime pay for an employee who is working two separate jobs for an employer is perfectly acceptable. However, that is not the case here. Plaintiff and those similarly situated are not working two separate jobs at all. They are working the same job but are being paid at two different rates for no reason.

19. Plaintiff seeks to recover unpaid overtime wages accumulated from the date of hire

---

[1] For example purposes only as Plaintiff is paid bi-weekly

and/or from 3 (three) years from the date of the filing of this Complaint.

20. Plaintiff began making the $20/$13.50 wage on January 4, 2016 and continues to make that amount upon the filing of this complaint. Before then, he made wages of $15.50 per hour for hours under 40 in a workweek and $13.39 for hours over 40 in a work week, plus the same blended overtime formula.

21. Overtime stopped being allowed on June 12, 2017.

22. Prior to the completion of discovery and to the best of the knowledge of Plaintiff, at the time of the filing of this Complaint, a good faith estimate of the unpaid overtime wages are as follows:

   a. Damages until January 3, 2016 = $3,539.52

   $485 - $267.80 + (($15.50 x .67 + $13.39 x .33) x .5 halftime rate x 20 hours) x 72 weeks

   b. Damages after January 3, 2016 = $11,358.75

   $600 - $270 + (($20 x .67 + $13.50 x .33) x .5 halftime rate x 20 hours) x 75 weeks

   c. Liquidated Damages = $14,898.27

23. At all times material hereto, Defendant failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Plaintiff performed services and worked in excess of the maximum hours provided by the Act but no provision was made by Defendant to properly pay him at the rate of time and one half for all hours worked in excess of forty hours (40) per workweek as provided in the Act.

24. Defendant knew and/or showed reckless disregard of the provisions of the Act

concerning the payment of overtime wages and remains owing Plaintiff these overtime wages since the commencement of Plaintiff's employment with Defendant as set forth above, and Plaintiff is entitled to recover double damages. Defendant never posted any notice, as required by Federal Law, to inform employees of their federal rights to overtime and minimum wage payments.

25. On November 30, 2016 Plaintiff asked his area supervisor via email why his regular rate of pay is not paid for all of his working hours.  The area supervisor wrote back that per contract after 40 hours they can only bill him (and other Captains) at the regular guard rate.  The explanation is "Unfortunately, that's how our accounts are built."

26. This explanation shows that Defendant was and has always been aware that they are billing at two different rates for no other reason than their contract with their clients. This contract clearly does not take the FLSA into account and has no bearing on the status of the Plaintiff and those similarly situated.

27. Defendant willfully and intentionally refused to pay Plaintiff and those similarly situated overtime wages as required by the laws of the United States as set forth above and remains owing Plaintiff these overtime wages since the commencement of Plaintiffs' employment with Defendant as set forth above.

28. Plaintiff has retained the law offices of the undersigned attorney to represent them in this action and are obligated to pay a reasonable attorneys' fee.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff  requests that this Honorable Court:

A. Enter judgment for Plaintiff against Defendant on the basis of Defendant's willful

    violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B. Award Plaintiff actual damages in the amount shown to be due for unpaid overtime compensation for hours worked in excess of forty weekly, with interest; and

C. Award Plaintiff an equal amount in double damages/liquidated damages; and

D. Award Plaintiff reasonable attorneys' fees and costs of suit; and

E. Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

## COUNT II: RETALIATORY PERSONNEL ACTION

29. Plaintiff incorporates herein paragraphs 1-28 above.

30. Plaintiff was employed by Defendant for approximately twenty years.

31. On May 30, Plaintiff sent an email to his Area Supervisor (different supervisor from paragraph 25). This email contained a screenshot of a Department of Labor webpage entitled ELaws: Fair Labor Standards Act Advisor. On the screenshot, it says that the FLSA "requires overtime pay at a rate of not less than one and one half times an employee's regular rate of pay after 40 hours of work in a workweek." Plaintiff stated in the email that his regular rate should be at $20 per hour.

32. Plaintiff was told by the area supervisor that they would look into it.

33. Plaintiff followed up further stating that he believes he should be making 1.5x his full $20 rate of pay.

34. Defendant's reaction to these emails came in the form of a letter to all Miami Captains on June 12, 2017. In this letter all Miami Captains were told that they could no longer work

over 40 hours without prior written authorization from their General Manager.

35. As a direct and proximate cause of Plaintiff's overtime complaints, he and other Miami Captains are forbidden from working overtime.

36. This comes at a loss of approximately 20 hours worked per week. At a rate of $30 per hour, this comes to $600 per week. The time period is 10 weeks as of this filing and continues to be in place.

37. Plaintiff's current damages for retaliation are $6000 and accruing weekly.

38. Plaintiff was cut hours because he requested his unpaid overtime wages.

39. Requesting unpaid overtime wages is protected activity under 29 USC 215.

40. Due to Plaintiff's retaliatory hours cap, he has been damaged.

41. Plaintiff has retained the law offices of the undersigned attorney to represent him in this action and are obligated to pay a reasonable attorneys' fee.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Enter judgment for Plaintiff and against Defendant on the basis of the Defendant has violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B. Award Plaintiff general and compensatory damages in the amount stated above and to be determined in the future as it accrues; and

C. Award Plaintiff reasonable attorneys' fees and costs of suit; and

D. Grant such other and further relief as this Court deems equitable and just.

## COUNT III: OFF THE CLOCK OVERTIME

42. Plaintiff incorporates herein paragraphs 1-28 above.

43. Plaintiff and those similarly situated were employed as Captains and paid at an hourly rate.

44. These Captains have duties similar to that of managers. As the word Captain implies, Captains are in charge of certain teams of people. This responsibility does not end when a Captain clocks out for the day. They are expected to continue handling these issues. They are required to handle emergencies and be available to answer and make calls, emails, and text messages while off the clock. Additionally, Captains come in early and stay late by approximately 20 minutes in order to get the report of the shift that happened before them and to give the report of their own shift to the person coming on after them. They were not allowed to clock in early or stay clocked in to do this.

45. This off the clock working time adds up to 60 - 90 minutes per day or 5 - 7.5 hours per week. Defendant provides no method for the Captain to account for this unpaid time. In step with that, Defendant makes no inquiry into the additional time worked. Defendant simply expects Captains to work without getting paid or does not consider this additional time worked compensable for unsubstantiated reasons.

46. As Plaintiff and those similarly situated regularly work more than 40 hours per week, all of this unpaid time should be considered overtime and paid at a rate of 1.5x the regular rate of pay.

47. Ironically, beginning in June 2017, all Miami Captains began receiving daily emails from Miami General Manager Darren McDonough around 7am or earlier taking famous quotes and manipulating them to encourage Captains to eliminate NBOT or Non-Billable

Overtime. For example on August 21, 2017 Captains received two emails, one at 5:13a and another at 6:02am that said, "To hell with the rules, if it sounds right / and you reduce the NBOT then it is right." Plaintiff receives email straight to his phone. In doing so, Defendant is forcing additional work emails on Plaintiff and those similarly situated while off the clock. Defendant is discussing elimination of overtime while forcing Captains to work without being paid overtime. This is not the only example of off the clock email, only the most flagrant in the face of the law.

48. Plaintiff's damages are $63,360.00, calculated as follows:

    a. $12,555.00 = 72 weeks x $15.50 x 7.50 hours x 1.5

    b. $19,125.00 = 85 weeks x $20 x 7.50 hours x 1.5

    c. $31,680.00 = Liquidated Damages

49. Defendant willfully and intentionally refused to pay Plaintiff and those similarly situated overtime wages as required by the laws of the United States as set forth above and remains owing Plaintiff these overtime wages since the commencement of Plaintiffs' employment with Defendant as set forth above.

50. Plaintiff has retained the law offices of the undersigned attorney to represent them in this action and are obligated to pay a reasonable attorneys' fee.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Enter judgment for Plaintiff against Defendant on the basis of Defendant's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B. Award Plaintiff actual damages in the amount shown to be due for unpaid overtime compensation for hours worked in excess of forty weekly, with interest; and

C. Award Plaintiff an equal amount in double damages/liquidated damages; and

D. Award Plaintiff reasonable attorneys' fees and costs of suit; and

E. Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

### COUNT IV: ENGAGED TO WAIT OVERTIME

51. Plaintiff incorporates herein paragraphs 1-28 and 42-50 above.

52. Defendant provides 24 hour security for different businesses and properties.

53. Captains are required to handle all types of emergency situations for Defendant over these 24 hours. The term emergency means anything that was not accounted for or planned for using on the clock employees. Basically, Captains have to make sure that a job site runs smoothly even when they are not there. They have to be available to answer questions and complaints from employees who are on the clock or their managers and supervisors. They do this by coordinating others to work, coming in to work themselves, or being available by phone, email, or text.

54. Captains must be available and ready to work at a moment's notice. This means that they are incapable of being truly free from work.

55. A Captain cannot simply not answer a call, text, or email. A captain has to be prepared to interrupt or leave entirely any dinner, movie, event, or sleep in order to handle any issues that arise at a jobsite.

56. All of this time goes unpaid and unappreciated by Defendant.

57. Plaintiff and those similarly situated are engaged to wait for any call from Defendant (or Defendant's employees). Defendant provides the phone numbers and email addresses of Plaintiff and those similarly situated to other employees, just for this purpose.

58. The engaged to wait time worked by Plaintiff amounts to all hours he spends off the jobsite and clocked out.

59. Defendant willfully and intentionally refused to pay Plaintiff and those similarly situated overtime wages for time engaged to wait as required by the laws of the United States as set forth above and remains owing Plaintiff these overtime wages since the commencement of Plaintiffs' employment with Defendant as set forth above.

60. Plaintiff has retained the law offices of the undersigned attorney to represent them in this action and are obligated to pay a reasonable attorneys' fee.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Enter judgment for Plaintiff against Defendant on the basis of Defendant's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B. Award Plaintiff actual damages in the amount shown to be due for unpaid overtime compensation for hours worked in excess of forty weekly, with interest; and

C. Award Plaintiff an equal amount in double damages/liquidated damages; and

D. Award Plaintiff reasonable attorneys' fees and costs of suit; and

E. Grant such other and further relief as this Court deems equitable and just and/or available pursuant to Federal Law.

## **JURY DEMAND**

Plaintiffs demands trial by jury of all issues so triable as of right.

.

                Dated: August 28, 2017.


                Respectfully submitted,

                By:__/s/ R. Edward Rosenberg
                R. Edward Rosenberg, Esquire
                Fla. Bar No.: 88231
                Email: rer@sorondorosenberg.com
                Sorondo Rosenberg PA
                1825 Ponce de Leon Blvd. #329
                Coral Gables, FL 33134
                T: 786.708.7550
                F: 786.204.0844

                Attorney for Plaintiff